UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff,                                    Case No. 16-cr-20135

v.                                  UNITED STATES DISTRICT COURT JUDGE
                                            GERSHWIN A. DRAIN

MICHAEL TAYLOR GARDNER,
                                    UNITED STATES MAGISTRATE JUDGE
Defendant.                                  DAVID R. GRAND

_____/

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART GOVERNMENT'S MOTIONS IN LIMINE [58, 59, 67]**

## I. INTRODUCTION

Michael Taylor Gardner ("Defendant") is set to stand trial for one count of Sex Trafficking of Children, in violation of 18 U.S.C. § 1591(a)(1), and one count for production of child pornography, in violation of 18 U.S.C. § 2251(a). *See* Dkt. No. 32.

On September 20, 2016, the Government filed two motions in limine. The first motion seeks to exclude evidence at trial pertaining to Minor Victim One's ("MV-1") identity and sexual history. *See* Dkt. No. 58. The second motion requests that the Court preclude evidence and argument relating to consequences of conviction or jury nullification. *See* Dkt. No. 59. Defendant responded to the two motions on September 23, 2016. *See* Dkt. No. 65, 66. The Government filed a third

-1-

motion in limine on September 25, 2016, seeking permission for a canine advocate to accompany the victim at trial. *See* Dkt. No. 67.

For the reasons stated below, the Government's motions are GRANTED in part and DENIED in part.

## II. LEGAL STANDARD

A motion *in limine* refers to "any motion, whether made before or during trial, to exclude anticipated prejudicial evidence before the evidence is actually offered." *Luce v. United States*, 469 U.S. 38, 40 n.2 (1984). The purpose of a motion *in limine* is to eliminate "evidence that is clearly inadmissible for any purpose" before trial. *Ind. Ins. Co. v. GE*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004). A district court rules on evidentiary motions *in limine* "to narrow the issues remaining for trial and to minimize disruptions at trial." *United States v. Brawner*, 173 F.3d 966, 970 (6th Cir. 1999). The guiding principle is to "ensure evenhanded and expeditious management of trials." *Ind. Ins.*, 326 F. Supp. 2d at 846.

Although neither the Federal Rules of Evidence, nor the Federal Rules of Civil Procedure explicitly authorize a court to rule on an evidentiary motion *in limine*, the Supreme Court has allowed district courts to rule on motions *in limine* "pursuant to the district court's inherent authority to manage the course of trials." *See Luce*, 469 U.S. at 41 n.4. District courts are granted very broad discretion in

2:16-cr-20135-GAD-DRG   Doc # 71   Filed 09/28/16   Pg 3 of 20   Pg ID 668

determining whether the probative value of evidence outweighs any danger of unfair prejudice. *United States v. Vance*, 871 F.2d 572, 576 (6th Cir. 1989).

A district court should grant a motion to exclude evidence *in limine* "only when [that] evidence is *clearly* inadmissible on *all* potential grounds." *Ind. Ins.*, 326 F. Supp. 2d at 846 (emphasis added). In cases where that high standard is not met, "evidentiary rulings should be deferred until trial so that questions of foundation, relevancy, and potential prejudice may be resolved in proper context." *Id*. Denial of a motion to exclude evidence *in limine* does not necessarily mean that the court will admit the evidence at trial. *See Luce*, 469 U.S. at 41. "[E]ven if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling." *Id*. at 41–42.

### III. DISCUSSION

The Government's first motion *in limine* seeks to exclude any evidence relating to the sexual history of the victim and to protect her identity during trial. Dkt. No. 58, p. 1 (Pg. ID No. 488). The Government's second motion *in limine* requests that the Court preclude "evidence or argument relating to punishment or collateral consequences of conviction in the upcoming trial of Michael Gardner, as well as evidence or argument relevant only to or advocating for jury nullification." Dkt. No. 59, p. 1 (Pg. ID No 499). In the third motion in limine, the Government

seeks permission for a canine advocate to accompany the victim during her trial testimony. Dkt. No. 67, p. 1 (Pg. ID No. 645).

Defendant has responded to the first two motions. *See* Dkt. No. 65, 66.

### A. The Court Grants the Government's Motion *in Limine* as to Evidence or Argument Related to MV-1's Sexual History

The Government first requests that the Court prohibit evidence that MV-1 engaged in other acts of prostitution unrelated to Defendant, before or after the dates alleged in the indictment. Dkt. No. 58, p. 3 (Pg. ID No. 490). Defendant counters that evidence of MV-1's sexual history is relevant, that any prejudice to MV-1 is inconsequential, and that denying admission of MV-1's sexual history would violate his Sixth Amendment rights. Dkt. No. 66, p. 2 (Pg. ID No. 639).

The Sixth Circuit previously considered this issue last year in *United States v. Mack*, 808 F.3d 1074 (6th Cir. 2015), *cert. denied*, 136 S. Ct. 1231 (2016). In *Mack*, the Sixth Circuit noted that:

> In "criminal proceeding[s] involving alleged sexual misconduct[,]" Federal Rule of Evidence 412 prohibits the admission of evidence "offered to prove that a victim engaged in other sexual behavior[.]" FED. R. EVID. 412(a)(1). However, evidence "of specific instances of a victim's sexual behavior with respect to the person accused of the sexual misconduct, if offered by the defendant to prove consent or if offered by the prosecutor" is admissible in criminal cases. FED. R. EVID. 412(b)(1)(B).

*Id*. at 1084. Accordingly, Defendant's argument that Rule 412 should not apply because MV-1 does not contend she was the victim of sexual assault is found to be

without merit, because the Sixth Circuit has already determined it applies to criminal cases charging sex trafficking of minors. *See id.*

Defendant goes on to argue that MV-1 is not in need of the protections offered under Rule 412 because she "is not truly 'underage,' " since she was 17 at the time of the alleged offense and will be 18 at the time of trial. This argument is at best disingenuous. The federal statute specifies that victims under the age of 18 are considered minors and Defendant does not dispute that MV-1 was under 18 at the time of the alleged offense. Accordingly, MV-1 was a minor under federal law. Defendant has not provided the Court with any precedent supporting his argument that because MV-1 had reached the state age of consent, she "was not truly" a minor under the federal "criminal proceeding involving alleged sexual misconduct."

Furthermore, nowhere in Rule 412 does it state that it only applies to victims who are underage at the time of trial. In the cases cited by Defendant, the victims were 16, *United States v. Ogden*, 685 F.3d 600 (6th Cir. 2012), and 14, 15, and 16, *United States v. Jackson*, 627 F. App'x 460 (6th Cir. 2015), *cert. denied*, 136 S. Ct. 2023 (2016), at the time of the charged offenses. Neither of those two cases applied Rule 412 solely due to the victims being underage at the time of trial. The facts of *Ogden* indicate the exact opposite, as the victim who had been 16 in September 2005 when the sexual acts occurred, would have been over 18 when the

trial took place in October 2008. *See United States v. Ogden*, No. CR06-20033-STA, 2010 WL 841296, at *1 (W.D. Tenn. Mar. 4, 2010), *aff'd*, 685 F.3d 600 (6th Cir. 2012). Accordingly, the Sixth Circuit's language in *Ogden* that "[t]he rule's protections were especially important in this case, because the victim was underage," would apply to the victim's age at the time of the alleged crime, rather than the time of trial. *Ogden*, 685 F.3d at 606. MV-1 was under 18 in October 2015, and thus qualifies as an underage victim to whom Rule 412's protections are especially important. *See id.*

Defendant next contends that evidence of MV-1's history of prostitution is necessary for him to impeach her credibility and assert his Sixth Amendment rights. Dkt. No. 66, pp. 3–4 (Pg. ID No. 640–41). The Sixth Circuit has already covered this issue, holding that "[t]he Sixth Amendment does not safeguard all avenues of cross-examination." *Jackson*, 627 F. App'x at 462; *see also United States v. Anderson*, 139 F.3d 291, 303 (1st Cir. 1998) (using prior commercial sex acts to impeach the victim's credibility "embod[ies] a particularly offensive form of stereotyping" and is not permissible). Sixth Circuit precedent uniformly favors excluding a victims' prior history of prostitution because such acts have no bearing on whether the defendant in a current case forced a victim into prostitution.[1] *See*

---

[1] The Sixth Circuit is in sync with the "number of other circuits [that] have held that evidence of prior prostitution is irrelevant to a charge under § 1591(a), and thus is properly barred." *United States v. Gemma*, 818 F.3d 23, 34 (1st Cir. 2016)

*Mack*, 808 F.3d at 1084 (affirming the district court's decision to exclude evidence of the victims' prior history of prostitution under Rule 412); *Jackson*, 627 F. App'x at 463 (finding the district court acted within its discretion in excluding evidence of the minor victims' prostitution histories under Rule 412).

MV-1's prior sexual history has no bearing on Defendant's intent at the time of the alleged offense. Introducing evidence of MV-1's prior prostitution would solely go to reinforce a narrative that she acted consistent with past sexual behavior, a line of reasoning "deemed so extremely prejudicial as to warrant special treatment under the Federal Rules of Evidence." *United States v. Gemma*,

---

(finding no error in not producing evidence of past prostitution because "the evidence sought is either entirely irrelevant or of such slight probative value in comparison to its prejudicial effect that a decision to exclude it would not violate [the defendant's] constitutional rights."); *United States v. Rivera*, 799 F.3d 180, 185 (2d Cir. 2015), *cert. denied sub nom. Villaman v. United States*, 136 S. Ct. 2396 (2016) ("Evidence of victims' prior acts of commercial sex is irrelevant to whether those victims were coerced into working as prostitutes."); *United States v. Cephus*, 684 F.3d 703, 708 (7th Cir. 2012) ("[T]he fact that she'd been a prostitute before does not suggest that he didn't beat and threaten her—that was his *modus operandi* and there's no evidence that he would have made an exception for [the victim]."); *United States v. Roy*, 781 F.3d 416, 420 (8th Cir. 2015) ("The victim's participation in prostitution either before or after the time period in the indictment has no relevance to whether [the defendant] beat her, threatened her, and took the money she made from prostitution in order to cause her to engage in commercial sex."); *United States v. Valenzuela*, 495 F. App'x 817, 820 (9th Cir. 2012) (holding that "evidence of prior prostitution is irrelevant to whether the victims consented to working as prostitutes."); *United States v. Chin*, 606 F. App'x 538, 541 (11th Cir.), *cert. denied*, 136 S. Ct. 351 (2015) (finding "the district court abused no discretion in excluding evidence of [the victim's] history of prostitution under Rule 412.").

818 F.3d 23, 34–35 (1st Cir. 2016). The Government's Motion *in Limine* as to this issue is granted.

### B. Evidence or Argument Related to MV-1's Identity

The Government next seeks to allow MV-1 to testify using her first name only and to withhold disclosing her home address or current place of residence. Dkt. No. 58, p. 8 (Pg. ID No. 495). Defendant opposes this request for five reasons: (1) MV-1 has not been harassed and does not suffer from emotional instability; (2) Defendant already knows MV-1's identity; (3) MV-1's identity is an issue in this case since she initially lied about her last name to police; (4) hiding MV-1's identity will add veracity to her claim against Defendant; and (5) MV-1 is now 18 and no longer qualifies as a child under 18 U.S.C. § 3509(a)(2). Dkt. No. 66, pp. 5–6 (Pg. ID No. 642–43).

Title 18, United States Code, Section 3509, provides that:

> On motion by any person the court may issue an order protecting a child from public disclosure of the name of or any other information concerning the child in the course of the proceedings, if the court determines that there is a significant possibility that such disclosure would be detrimental to the child.

18 U.S.C. § 3509(d)(3)(A). A "child" is defined by the section as "a person who is under the age of 18, who is or is alleged to be" "a victim of a crime of physical abuse, sexual abuse, or exploitation" or "a witness to a crime committed against another person." 18 U.S.C. § 3509(a)(2).

-8-

Protections similar to those requested by the Government have been granted in other cases involving alleged sex trafficking outside of this district. *See, e.g.*, *United States v. Thompson*, No. 14-CR-228A, 2016 WL 1584382, at *7 (W.D.N.Y. Apr. 6, 2016) (finding that the government had a compelling interest in limiting identification of the victims given the anticipated explicit and sensitive nature of the evidence in the case); *United States v. Graham*, No. 14-CR-500 NSR, 2015 WL 6161292, at *10 (S.D.N.Y. Oct. 20, 2015) (identifying victims by their first names only because there was "a 'legitimate and substantial' interest in protecting the Victim and the uncharged victims from 'likely adverse personal, professional and psychological consequences of publicly linking their identities' to their prior prostitution activity"); *United States v. Campbell*, 770 F.3d 556, 560 (7th Cir. 2014), *cert. denied*, 135 S. Ct. 1724 (2015) (noting that the four victims in a sex trafficking case "testified at trial under their real first names"); *United States v. Royal*, 442 F. App'x 794, 795 n.1 (4th Cir. 2011) ("Because the victims were minors at the time of the offense, the record refers to them by first name only."); *United States v. Kelly*, No. 07-CR-374 (SJ), 2008 WL 5068820, at *1–2 (E.D.N.Y. July 10, 2008) (allowing adult witness to testify under her first name and first initial of her last name in a trial for sex trafficking); *United States v. Paris*, No. CR 03:06-CR-64(CFD), 2007 WL 3124724, at *1 (D. Conn. Oct. 24, 2007) (granting

motion to refer to child and adult victim-witnesses by their first names and first initial of their last names to protect their identifies).

Defendant's first argument against allowing MV-1 to testify under her first name is that it is unnecessary, since she has not been harassed and does not suffer from emotional instability. Dkt. No. 66, p. 5 (Pg. ID No. 642). However, it appears that the Government seeks to prevent future harassment of MV-1, rather than put a stop to preexisting harassment. *See* Dkt. No. 58, p. 8 (Pg. ID No. 495). Additionally, not one of the cases that have granted identification limitations has found that emotional instability is a prerequisite to qualify for such privacy protections. Instead, the courts have looked to the "*likely* adverse personal, professional and psychological consequences of linking [victims'] identities to their past lives as sex workers." *Thompson*, 2016 WL 1584382, at *7 (quoting *Paris*, 2007 WL 1484974, at *2) (emphasis added). Courts have also found "a compelling interest in encouraging crime victims to testify by protecting them from the adverse consequences of testifying." *Id*.

Second, Defendant argues that there is no need to protect MV-1's identity because he has known MV-1 since their time in high school together. Dkt. No. 66, p. 5 (Pg. ID No. 642). This argument misunderstands the Government's reason for seeking to allow MV-1 to testify with privacy protections. Allowing MV-1 to testify using her first name only and not requiring disclosure of her home address

and place of residence is not to keep that information from Defendant, who is already aware of it, but rather aims to keep such information from the media and general public. *See* Dkt. No. 59, p. 8 (Pg. ID No. 495). As stated above, publicly linking MV-1's identity with her sexually-related testimony could result in legitimate and substantial adverse personal, professional and psychological consequences to her. *See Paris*, 2007 WL 1484974, at *1.

Third, Defendant asserts that MV-1's identity is an essential issue in this case since she initially lied about her last name to police. Dkt. No. 66, p. 5 (Pg. ID No. 642). It is true that the fact MV-1 provided a fictitious last name is part of the factual background of this case, and Defendant may properly inquire into whether she initially lied to the police about her name. However, it is certainly possible to pursue this line of questioning without eliciting MV-1's actual last name and providing her full identity to the media and public. Defense counsel can ask MV-1 what name she initially provided to police ("Bingham"), and then ask her a yes-no question as to whether that is her actual last name. Stating MV-1's actual first and last name (as well as home address or current place of residence) would not make Defendant's guilt more or less probable than it would be by using MV-1's her first name and first initial of her last name.

Fourth, Defendant argues that hiding MV-1's last name will add veracity to her claim against Defendant, hindering his efforts at defense. *See* Dkt. No. 66, p. 5

(Pg. ID No. 642). As other courts have determined, such potential prejudice may be remedied by an instruction to the jury prior to deliberations. *See Paris*, 2007 WL 1484974, at *2 (ordering that the "proposed cautionary instruction should reflect that the partial identification of these witnesses is not to be viewed as suggesting the guilt of [the defendant].")

Defendant's last argument is that MV-1 has aged out of the protections offered by 18 U.S.C. § 3509. This Court is not the first court to consider the applicability of 18 U.S.C. § 3509 to victims or witnesses who are no longer under the age of 18 at the time of their testimony. *See United States v. Harris*, No. 2:14CR76, 2016 WL 3190482 (E.D. Va. June 6, 2016), *aff'd*, No. 15-4451, 2016 WL 3524626 (4th Cir. June 28, 2016); *Paris*, 2007 WL 1484974.

In *Harris*, the district court noted that it may be unclear whether witnesses who fell under § 3509(a)(2)(A)'s definition of "child" at the time of the criminal incident would be covered by the privacy protections of § 3509 if they were over 18 when they testified. 2016 WL 3190482 at *1. However, the *Harris* court found that it had "inherent authority under the First Amendment of the United States Constitution, and the common law, to protect the identify of such witnesses," and found that such protection was "warranted by the relevant case-specific circumstances." *Id.*

-12-

Similarly, in *Paris*, the district court noted that "[w]hile the Minors are no longer children, 18 U.S.C. § 3509(d)(3), which authorizes courts to protect information about the identities of minor victims of sex crimes, highlights the public interest in protecting young victims of sex crimes." 2007 WL 1484974, at *2 n.2. Both the adult and minor victims in *Paris* were permitted to testify using their first name and first initial of their last names to protect their identities. *Id.*

The Court finds the precedent allowing narrow identification protections for victims of sex crimes, who were minors at the time of the alleged crime but were over 18 at the time of testimony, to be persuasive. *See Thompson*, 2016 WL 1584382, at *7; *Graham*, 2015 WL 6161292, at *10; *Kelly*, 2008 WL 5068820, at *1–2; *Paris*, 2007 WL 3124724, at *1. Additionally, such reasoning is consistent with the Crime Victims' Rights Act, which states that a crime victim has the "right to be treated with fairness and with respect for the victim's dignity and privacy." 18 U.S.C. § 3771(a)(8). Use of MV-1's full legal name would add nothing substantive to her in-court testimony that cannot be supplied by use of her first name and first initial of her last name.

MV-1's identification during trial will be limited to her first name and first initial of her last name. The Government is ordered to provide a photograph of the victim during jury selection to identify MV-1 to potential jurors, in order to properly screen the venire. Even with the protection placed on MV-1's identity, the

-13-

press and public will still be able to attend the trial and follow the testimony and evidence. "Thus, the First Amendment interests underlying the press and the public's right to access criminal trials would still be fully served: even with the Government's proposed protective order in place, the trial in this case would still be open to '[p]ublic scrutiny,' and it would still 'foster[ ] an appearance of fairness.'" *Thompson*, 2016 WL 1584382, at *7 (quoting *Globe Newspaper Co. v. Superior Court for Norfolk Cty.*, 457 U.S. 596, 606 (1982)).

Accordingly, the Government's Motion in Limine with respect to protecting the identity of MV-1 is granted in part. MV-1 will be permitted to testify using her first name and the first initial of her last name, rather than just her first name as requested. MV-1 will not be required to disclose her home address or current place of residence.

### C. The Court Grants the Government's Motion *in Limine* as to Evidence or Argument Related to Punishment and the Collateral Consequences of a Conviction

It does not appear that Defendant objects to being prohibited from referencing the possible consequences of a prison sentence, the term of that sentence, or the requirement to register as a sex offender upon conviction in front of the jury. Dkt. No. 65, p. 1 (Pg. ID No. 633). Accordingly, the Government's Motion *in Limine* is granted as to punishment or collateral consequences of a conviction.

-14-

### D. The Court Denies the Government's Motion *in Limine* as to Evidence or Argument Related to Jury Nullification

The Government seeks to have the Court preclude evidence or argument that relates only to jury nullification. Dkt. No. 59, p. 3 (Pg. ID No. 501). Provided examples of such evidence or arguments include: reference to Michigan's age of consent laws; evidence of Defendant's upbringing or behavior in relationships with women other than MV-1; evidence regarding Defendant's ignorance of the law; or evidence or argument about MV-1's character or life experiences, such as initial agreement to engage in the activity, opportunities to leave or cease, or benefits received from the activity. *Id.* at 3–4.

Defendant's counsel has agreed that he will not argue to the jury that even if they are convinced beyond a reasonable doubt that Defendant is guilty of violating a federal law, they may acquit Defendant because they do not like that law. Dkt. No. 65, p. 3 (Pg. ID No. 635). However, Defendant's counsel also argues that he should be allowed to:

> [R]emind the jury that they are not merely an unfeeling fact-finding machine; that they alone have the power to decide whether Mr. Gardner should be convicted as a felon, or whether he should go free; that no one else has that power, not Congress, not the President, nor the trial judge; that their decision, based on the law and common sense and their sense of right and wrong, is final.

*Id.*

The Sixth Circuit has previously approved of a district court's refusal to discuss the issue of jury nullification with the jury. *See United States v. Krzyske*, 836 F.2d 1013, 1020 (6th Cir. 1988) ("To have given an instruction on nullification would have undermined the impartial determination of justice based on law."); *United States v. Avery*, 717 F.2d 1020, 1027 (6th Cir. 1983) ("Although jurors may indeed have the power to ignore the law, their duty is to apply the law as interpreted by the court and they should be so instructed."). Accordingly, although the jury has a "right" to reach any verdict it wishes, the Court still maintains a duty to instruct the jury as to the correct law applicable to a particular case.

At this point, it is unclear exactly what is included in the category of "evidence or argument that relates only to jury nullification." Although some examples were given, the Court finds that this is too vague a category to grant the relief requested. The Government's Motion *in Limine* as to this issue is denied, without prejudice to renewal in the context of the trial.

The Court will permit Defendant to introduce relevant evidence at trial and the Court will properly instruct the jury as to how they are to consider that evidence. The Court will further instruct the jury about how to apply the correct law applicable to the instant case. Defendant will not be permitted to argue that the jury may render a non-guilty verdict by ignoring the law provided by the Court.

### E. The Court Denies the Government's Motion *in Limine* as to Use of a Canine Advocate to Accompany the Victim at Trial

The Government's final motion seeks to have Amos, a two-year-old chocolate Labrador trained by Leader Dogs for the Blind, accompany MV-1 during her testimony at trial. Dkt. No. 67, pp. 1–3 (Pg. ID No. 645–47). Defendant opposes this motion, arguing that the presence of the therapy dog during an adult victim's testimony in front of the jury would result in prejudice that could not be ameliorated by a jury instruction.

The Court acknowledges that this is a rapidly evolving issue of law. Numerous state courts allowed a trained support animal to accompany a witness while testifying. *See State v. Devon D.*, 321 Conn. 656, 675, 138 A.3d 849, 861 (2016) (agreeing that a trial court properly exercised its discretion in allowing a dog's presence to help an eight-year-old victim of sexual abuse testify); *State v. Reyes*, No. M201500504CCAR3CD, 2016 WL 3090904, at *5 (Tenn. Crim. App. May 24, 2016) (determining that the trial court did not abuse its discretion in allowing use of the facility dog to aid a ten-year-old victim in a rape trial); *People v. Johnson*, No. 325857, 2016 WL 1576933 (Mich. Ct. App. Apr. 19, 2016) (concluding that "use of a support animal is more neutral, and thus less prejudicial, than the use of a support person," in aiding a six-year-old victim); *State v. Jacobs*, 2015-Ohio-4353, 2015 WL 6180908, ¶¶ 22–26 (October 21, 2015) (affirming the discretion of the trial court to allow a companion dog to accompany a 17-year-old

-17-

victim as she testified); *People v. Chenault*, 227 Cal. App. 4th 1503, 1515–16, 175 Cal. Rptr. 3d 1, 10 (2014), *review denied* (Oct. 15, 2014) (finding that aid of a "comfort dog" during trial testimony of 11 and 13-year-old victims was not "inherently prejudicial or necessarily more prejudicial than the presence of a support person"); *People v. Tohom*, 109 A.D.3d 253, 969 N.Y.S.2d 123 (2013) (affirming a trial court's discretion in permitting therapeutic comfort dog to be present on witness stand with 15-year-old victim); *State v. Dye*, 178 Wash. 2d 541, 556–57, 309 P.3d 1192, 1200 (2013) (allowing presence of comfort dog to aid 56-year-old victim with severe developmental disabilities was not unreasonable).

Nevertheless, the Government has not provided, nor can the Court find, any federal district court cases where a canine advocate was permitted to aid a victim in testifying in front of a jury. Further, the Court has not found any cases where a canine advocate was allowed to be present during the testimony of a witness over the age of 18 who lacked severe development disabilities. The majority of cases support allowing a canine advocate where the victim is a minor at the time of testimony and is testifying about sexual abuse or assault that he or she endured. The Court declines to be the first federal court to permit a canine advocate during trial testimony, based on the present facts.

The Court does not dispute that the medical and academic literature supports a finding that a person can enjoy a myriad of physical and psychological benefits

from interacting with a friendly dog, particularly in times of stress. *See, e.g.*, Casey Holder, Comment, *All Dogs Go to Court: The Impact of Court Facility Dogs as Comfort for Child Witnesses on a Defendant's Right to a Fair Trial*, 50 HOUS. L. REV. 1155 (2013). Amos, specifically, seems to be a well-qualified canine advocate with an excellent temperament for aiding crime victims. Although the Court will not allow a canine advocate to be present in the courtroom during MV-1's testimony in front of the jury, that does not mean that Amos cannot aid MV-1 during trial. The Court grants permission for Amos to be present outside the courtroom in the lobby area or in the attorney conference rooms so that MV-1 can seek support from him before and after her testimony, and during breaks from testifying.

## IV. CONCLUSION

These are the preliminary rulings of the Court. The Court emphasizes that "[a] ruling on a motion *in limine* is no more than a preliminary, or advisory, opinion that falls entirely within the discretion of the district court . . . the district court may change its ruling at trial for whatever reason it deems appropriate," and "where sufficient facts have developed to warrant the change." *United States v. Yannott*, 42 F.3d 999, 1007 (6th Cir. 1994) (citing *United States v. Luce,* 713 F.2d 1236, 1239 (6th Cir. 1983) *aff'd,* 469 U.S. 38 (1984)).

-19-

Accordingly, the Court will **GRANT** in part and **DENY** in part the Government's Motions *in Limine* [58, 59].

IT IS SO ORDERED.

Dated:          September 28, 2016

/s/Gershwin A Drain
HON. GERSHWIN A. DRAIN
United States District Court Judge