UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL TAYLOR GARDNER,

        Petitioner,

        v.

UNITED STATES OF AMERICA,

        Responded.

_____/

Civ. Case No. 19-cv-12088
Crim. Case No. 16-cr-20135

U.S. District Court Judge
Gershwin A. Drain

**OPINION AND ORDER DENYING PETITIONER'S MOTION TO VACATE SENTENCE (ECF No. 115), DENYING PETITIONER'S MOTION TO AMEND HIS MOTION TO VACATE (ECF No. 121), GRANTING IN PART AND DENYING IN PART PETITIONER'S SECOND MOTION TO AMEND HIS MOTION TO VACATE (ECF No. 127), DENYING PETITIONER'S MOTION TO APPOINT COUNSEL AND FOR EVIDENTIARY HEARING (ECF No. 128), GRANTING CERTIFICATE OF APPEALABILITY, AND GRANTING LEAVE TO PROCEED _IN FORMA PAUPERIS_ ON APPEAL**

## I.   INTRODUCTION

On October 13, 2016, Petitioner Michael Taylor Gardner was convicted, after a jury trial, of sex trafficking a minor using force, fraud, or coercion, in violation of 18 U.S.C. § 1591(a)(1) and (b)(1) (Count One) and production of child pornography, in violation of 18 U.S.C. § 2251 (a) and (e) (Count Two).  _See_ ECF No. 77.  This

1

Court sentenced Petitioner to 240 months of imprisonment on both Counts, to run concurrently, followed by supervised release for eight years. ECF No. 97, PageID.802–03. The Sixth Circuit affirmed Petitioner's convictions, *United States v. Gardner*, 887 F.3d 780 (6th Cir. 2018), and he did not seek certiorari before the United States Supreme Court, ECF No. 115, PageID.2111.

Presently before the Court are Petitioner's Motion to Vacate Sentence Pursuant 28 U.S.C. § 2255 (hereinafter "Motion to Vacate"), ECF No. 115, and his Motion to Amend his Motion to Vacate (hereinafter "First Motion to Amend"), ECF No. 121. Both Motions are fully briefed. *See* ECF Nos. 118, 119, 124, 125. Also before the Court are Petitioner's Second Motion to Amend his Motion to Vacate (hereinafter "Second Motion to Amend"), ECF No. 127, and Petitioner's Motion to Appoint Counsel and for Evidentiary Hearing, ECF No. 128, neither of which the Government has responded to. Upon review of the Parties' submissions, the Court concludes that oral argument will not aid in the disposition of these matters. Therefore, the Court will resolve the instant Motions on the briefs. *See* E.D. Mich. LR 7.1(f)(2). For the following reasons, the Court **DENIES** Petitioner's Motion to Vacate (ECF No. 115), **DENIES** Petitioner's First Motion to Amend (ECF No. 121), **GRANTS IN PART AND DENIES IN PART** Petitioner's Second Motion to Amend (ECF No. 127), and **DENIES** Petitioner's Motion to Appoint Counsel and

for Evidentiary Hearing (ECF No. 128).  The Court also **GRANTS** a certificate of appealability and **GRANTS** leave to proceed *in forma pauperis* on appeal.

## II.   RELEVANT FACTUAL BACKGROUND

MV-1 and Petitioner met during high school but drifted apart after Petitioner graduated.  ECF No. 106, PageID.1368.  They reconnected via Facebook during August 2015.  *Id.* at PageID.1369, 1441–42; *see also* ECF No. 107, PageID.1579–81.  They first began texting each other on August 27, 2015.  ECF No. 104, PageID.1157.

As found by the jury, at some point during the period from August 2015 until his arrest in mid-October 2015, Petitioner trafficked MV-1, whom he knew was seventeen at the time.  ECF No. 106, PageID.1369–70; *id.* at PageID.1451–52, 1454.

Nathan Yockey, the custodian of records for Backpage.com, testified that the Backpage.com account for MV-1 was created on August 13, 2015.  ECF No. 105, PageID.1244, 1271–72.  Petitioner had a white iPhone that he used to post online advertisements for MV-1 on Backpage.com.  ECF No. 106, PageID.1363–64. Advertisements for MV-1 were posted on Backpage.com with Petitioner's phone number listed as the number to contact at least as early as October 2, 2015.  ECF No. 105, PageID.1259–60.  Petitioner and MV-1 also used his iPhone to communicate with Backpage.com clients via text message.  *Id.* at PageID.1399–1400.  When a

client called, Petitioner had MV-1 speak to the client on the iPhone on speakerphone and in his presence.[1]  *Id.* at PageID.1396–99.

At one point, MV-1 also had her own cell phone, which was an HTC Desire. ECF No. 106, PageID.1362–63.  MV-1 took suggestive pictures of herself with this phone, which she sent to Petitioner.  *Id.* at PageID.1394–95.  She testified that she did not send the pictures to anyone else or know that the pictures were going to be posted online.  *Id.* at PageID.1395.  At least three of the pictures sent to Petitioner's phone were taken on the HTC Desire on October 2, 2015 and sent to Petitioner's iPhone on October 5, 2015.  ECF No. 105, PageID.1189–92, 1194, 1197–98.

The HTC Desire phone was also used in prostitution.  MV-1 initially testified that she could not remember whether Petitioner ever posted Backpage advertisements from her phone, although she believed both of their phone numbers might have been listed on the advertisements in the beginning.  *Id.* at PageID.1455–57.  However, she later testified that the advertisements were made by phones

---

[1] Petitioner testified that he first learned that MV-1 was prostituting herself at the end of August or beginning of September 2015 and that he never helped her prostitute herself, set up "dates" for her, or posted any advertisements on Backpage.com.  ECF No. 107, PageID.1585, 1592.  He further testified that he and MV-1 broke up between September 8th or 9th and the beginning of October, and that he dated someone else during that time, although he continued to see MV-1 during the first two weeks of September.  *Id.* at PageID.1592–93.  Despite their break up, MV-1 kept asking to borrow his phone, so he gave it to her.  *Id*.  He testified that she used his phone to prostitute herself without his assistance.  *Id.* at 1599–1600.

4

belonging to her; Petitioner; Petitioner's friend, Marcel; and Marcel's girlfriend.  *Id.* at PageID.1501–02.  MV-1 testified that sometimes clients would call her phone number to enquire about the Backpage.com advertisements.  *Id.* at PageID.1507.

MV-1 testified that she believed Petitioner's cousin, Marvie Gardner had stolen the HTC Desire phone after she left the phone in his car at some point before Petitioner's arrest.  ECF No. 60, PageID.540–41; *see also* ECF No. 106, PageID.1362–63.  Orion King, who was incarcerated with Petitioner, testified that Petitioner told him that Petitioner had arranged for his cousin to steal MV-1's phone so that she would be reliant on his iPhone and he could monitor her activity.  ECF No. 108, PageID.1908–09.

Although not explicitly solicited by Counsel, there was some testimony at trial alluding to the fact that MV-1 had engaged in prostitution prior to reconnecting with Petitioner in summer of 2015.  *See, e.g.*, ECF No. 106, PageID.1451 ("Q. And it was Michael that got you to do this, it was not your idea? A. Right. It wasn't my idea to just start doing it again.").

### III.   LAW & ANALYSIS

### A. Motion to Vacate (ECF No. 115)

Petitioner raises four grounds in support of his Motion to Vacate.  *See* ECF No. 115.  First, he contends that his due process rights were violated when the

Government withheld "exculpatory and impeachment evidence from an HTC Desire 626s cell phone, which was used for prostitution in this instant case." *Id.* at PageID.2113. Second, Petitioner asserts that Appellate Counsel was ineffective for failing to investigate and raise the issues of prosecutorial misconduct and the potential *Brady* violation associated with the exculpatory evidence withheld from the HTC phone. *Id.* at PageID.2114. Third, Petitioner claims that Trial Counsel was ineffective for failing to investigate and request exculpatory and impeachment evidence from the HTC phone. *Id.* at PageID.2115. Fourth, Petitioner argues that Trial Counsel was ineffective for failing to investigate and present exculpatory records during trial, leading to a failure to impeach key Government witnesses. *Id.* at PageID.2117.

In his Reply, Petitioner also "requests an evidentiary hearing and the opportunity to conduct discovery in conjunction with his claims." ECF No. 119, PageID.2141.

### 1. Legal Standard

Under 28 U.S.C. § 2255, a prisoner sentenced by a federal court may "move the court which imposed the sentence to vacate, set aside or correct the sentence." To succeed on his motion, the petitioner must demonstrate "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding

6

invalid." *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001) (citing *United States v. Addonizio*, 442 U.S. 178, 185-86 (1979)).  However, "[i]t is well-established that a § 2255 motion 'is not a substitute for direct appeal.'" *Ray v. United States*, 721 F.3d 758, 761 (6th Cir. 2013) (quoting *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir.2003)).  As such, "claims that could have been raised on direct appeal, but were not, will not be entertained via a motion under § 2255 unless the petitioner shows: (1) cause and actual prejudice to excuse his failure to raise the claims previously; or (2) that he is 'actually innocent' of the crime." *Id*.  (citing *Bousley v. United States*, 523 U.S. 614, 622 (1998)).

### 2.  Discussion

Petitioner's first three grounds all concern the same "HTC Desire 626s cell phone, which was used for prostitution in this instant case."  ECF No. 115, PageID.2113.  It was not clear in his initial Motion, but Petitioner's Reply confirmed that his claims refer to MV-1's cell phone, which was stolen by Petitioner's cousin, Marvie Gardner.[2]  *See* ECF No. 119, PageID.2142, 2145.  The Government asserts that "[l]aw enforcement never recovered MV-1's HTC Desire phone" because "[i]t was not in the hotel room on the night of [Petitioner]'s arrest."  ECF No. 118,

---

[2] Petitioner "vehemently denies telling Orin King that his cousin stole [MV-1]'s phone," but maintains that Marvie Gardner was in possession of MV-1's phone when he was arrested in connection with this matter.  ECF No. 119, PageID.2147, 2145.

PageID.2135.  Petitioner counters that Marvie Gardner was also detained on October 10, 2015 and completed a form providing consent for a forensic examination of an HTC Desire phone, after it was seized by Detective/Lieutenant A. Kolbas.  ECF No. 119, PageID.2142 (citing *id.* at PageID.2181; *id.* at PageID.2182).  In response to Petitioner's First Motion to Vacate, the Government notes that Petitioner is speculating that the phone recovered from Marvie Gardner once belonged to MV-1 and that it contained material or exculpatory evidence.  ECF No. 124, PageID.2323–24 n.1.  Regardless, the Government maintains that the phone in question "was made available to the defense in discovery."  *Id.*

### i.  *Brady* Violation

It is well established that the Due Process Clause requires the prosecution to disclose to a criminal defendant evidence in its possession that is favorable and material to either guilt or punishment.  *Brady v. Maryland*, 373 U.S. 83, 87 (1963).  To establish a *Brady* violation: "[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the [prosecution], either willfully or inadvertently; and prejudice must have ensued."  *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999).  "[F]avorable evidence is material, and constitutional error results from its suppression by the government, 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been

different.'" *Kyles v. Whitley*, 514 U.S. 419, 433 (1995) (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)).  Thus, a petitioner can establish materiality and prejudice by showing that "there is a reasonable probability that his conviction or sentence would have been different had these materials been disclosed." *Strickler*, 527 U.S. at 296 (1999).  However, "[t]he question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Kyles*, 514 U.S. at 434.

Here, it is not clear that Petitioner has satisfied any of the elements of a *Brady* claim.  Preliminarily, it is not at all clear that any evidence has been suppressed.  To the extent the HTC Desire phone that previously belonged to MV-1 and the HTC Desire phone recovered from Marvie Gardner are different devices, the Government asserts they never recovered MV-1's phone.  The Government cannot suppress evidence that it never had.  *See United States v. Jones*, 399 F.3d 640, 647 (6th Cir. 2005) (noting that *Brady* material must be, *inter alia*, in the possession of the prosecution (citing *United States v. Bhutani*, 175 F.3d 572, 577 (7th Cir.1999))).  To the extent the devices were the same, the Government asserts that it made the phone recovered from Marvie Gardner available to the defense in discovery.  The Government cannot have "suppressed" evidence that it timely disclosed.  *See Coleman v. Mitchell*, 268 F.3d 417, 438 (6th Cir. 2001) ("The Brady rule does not

9

assist a defendant who is aware of essential facts that would allow him to take advantage of the exculpatory evidence at issue."). As such, Petitioner cannot establish the second element of a *Brady* violation.

Petitioner also fails to establish the remaining elements of a *Brady* violation. Petitioner cannot establish that evidence from the HTC Desire phone would be "favorable" because he does not know what evidence is on the phone.[3] *See Sanchez-Llamas v. Oregon*, 548 U.S. 331, 359 (2006) ("In the case of a *Brady* claim, it is impossible for the defendant to know as a *factual* matter that a violation has occurred before the exculpatory evidence is disclosed." (emphasis added)); *see also United States v. Sullivan*, 431 F.3d 976, 986 (6th Cir. 2005) (finding no *Brady* violation because petitioner "presented no evidence from which [the court] could conclude that information in the missing forms would be favorable to his defense," failed to identify which forms were missing, and failed to "describe how the information contained in the forms could have been exculpatory"). Indeed, Petitioner requests an evidentiary hearing to determine what exculpatory evidence the phone might

---

[3] In support of his ineffective assistance of appellate counsel claim, Petitioner asserts that if the HTC Desire phone contained inculpatory evidence, the Government would have introduced it a trial, and the fact that they did not indicates that it must have contained exculpatory evidence. ECF No. 119, PageID.2152. This argument is speculative and, more importantly, insufficiently specific to support a *Brady* violation.

contain.  *See* ECF No. 119, PageID.2148.  Therefore, Petitioner cannot establish the first element of a *Brady* violation.

Petitioner contends the phone will contain evidence that it "was used for prostitution and Backpage.com." *Id.* at PageID.2146.  Assuming this is correct, Petitioner was not prejudiced at trial by the lack of this evidence.  MV-1 herself testified that her phone was used to make some of the advertisements on Backpage.com and alluded to the fact that she had previously engaged in prostitution.  As such, this evidence was already before the jury, and any additional evidence from the HTC Desire would have merely been cumulative and thus not material under *Brady*.  See *Brooks v. Tennessee*, 626 F.3d 878, 893 (6th Cir. 2010) ("Evidence that is merely cumulative to evidence presented at trial is not material for purposes of *Brady* analysis." (citation and internal quotation marks omitted)); *see also Jefferson v. United States*, 730 F.3d 537, 550 (6th Cir. 2013).  To the extent Petitioner anticipates the HTC Desire phone will have evidence of MV-1's experiences with prostitution prior to the dates alleged in the Indictment, such evidence is inadmissible under Federal Rule of Evidence 412, *United States v. Mack*, 808 F.3d 1074, 1084 (6th Cir. 2015), and this Court already ruled that "MV-1's prior sexual history has no bearing on [Petitioner]'s intent at the time of the alleged offense," ECF No. 71, PageID.672.  Because the purportedly suppressed evidence

11

was either not material or not admissible, its exclusion from trial cannot establish the prejudice element of a *Brady* violation.

Accordingly, Petitioner cannot succeed on his *Brady* violation claim.

### ii.    Ineffective Assistance of Trial Counsel

To establish a claim for ineffective assistance of counsel under the Sixth Amendment, a petitioner must show that (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "any deficiencies in counsel's performance must [have] be[en] prejudicial to the defense." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984), *superseded on other grounds* by Antiterrorism and Effective Death Penalty Act of 1966, Pub. L. No. 104-132, 110 Stat. 124; *see also Harrington v. Richter*, 562 U.S. 86, 104 (2011).

With respect to the performance prong, the Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead emphasized that the proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (citation and internal quotation marks omitted).  The reviewing court must determine "whether counsel's assistance was reasonable considering all the circumstances." *Strickland*, 466 U.S. at 688.  The court must make "every effort" "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's

perspective at the time." *Id.* at 690.  In doing so, defense counsel is entitled to a "strong[] presum[ption]" that he or she made "all significant decisions in the exercise of reasonable professional judgment." *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (quoting *Strickland*, 466 U.S. at 690).

To show prejudice, the petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.  However,  a petitioner "need not show that counsel's deficient conduct more likely than not altered the outcome in the case." *Id.* at 693.  In determining whether defense counsel's errors resulted in the required prejudice, the court presumes the judge and jury acted according to the law. *Id.* at 694-95.

### a. Failing to investigate and request exculpatory evidence from the HTC phone

Petitioner asserts that Trial Counsel was infective for failing to "investigate and request[] exculpatory and impeachment evidence from an HTC Desire 626s cell phone that was used for prostitution."  ECF No. 119, PageID.2153.  Petitioner contends that both he and his fiancée asked Appellate Counsel about obtaining records from MV-1's phone in April 2016 and that Trial Counsel disregarded their suggestions. *Id.* at PageID.2154 (citing *id.* at PageID.2194–97).

13

It is not clear that Trial Counsel's performance was deficient in not utilizing evidence from the HTC Desire phone.  "Counsel [is] entitled to formulate a strategy that [is] reasonable at the time and to balance limited resources in accord with effective trial tactics and strategies." *Harrington*, 562 U.S. at 107 (2011).  As such, "[a]n attorney need not pursue an investigation that would be fruitless, much less one that might be harmful to the defense." *Id.* at 108.  Here, Petitioner is unsure exactly what evidence is on the HTC Desire phone, and for the reasons discussed *infra*, his "attorney had reason to question the truth of [Petitioner]'s account" that the device would show that he was completely uninvolved in the prostitution. *See id*.

Regardless, Petitioner cannot establish that he was prejudiced by any alleged deficiency.  As discussed in Section III, Subsection A, Part 2, Subpart i *supra*, Petitioner is far from certain that the HTC Desire, in fact, contains exculpatory evidence.  Even if it does, such evidence would be either cumulative—as further evidence that the device was used for prostitution—or inadmissible—as evidence that MV-1 had previously engaged in prostitution—and thus cannot support a finding of prejudice.  *See Davis v. Booker*, 589 F.3d 302, 309 (6th Cir. 2009) (holding district court erred in finding prejudice prong of ineffective assistance of counsel standard satisfied because "undisclosed impeachment evidence is cumulative when the witness has already been sufficiently impeached at trial"

14

(citation and internal quotation marks omitted)).  Trial Counsel's alleged failure to "investigate and request" the evidence from the HTC Desire, ECF No. 119, PageID.2153, does not "undermine the confidence in the outcome." *Strickland*, 466 U.S. at 694.  Thus, Petitioner's ineffective assistance of trial counsel claim cannot succeed on this ground.

### b.  Failing to present exculpatory evidence or impeach witnesses

Petitioner also claims Trial Counsel provided ineffective assistance by "fail[ing] to investigate and present exculpatory records during trial, which led to Trial Counsel's failure to impeach key Government's witness."  ECF No. 119, PageID.2158.  Specifically, Petitioner argues that Trial Counsel should have presented Backpage.com advertisements for MV-1 that were created between August 18, 2015 and August 28, 2015 to rebut MV-1's testimony Petitioner convinced her to start prostituting herself again.  *Id.* at PageID.216467; *see also* ECF No. 127.

Again, it is unclear whether counsel's performance was deficient, although this is a much closer question.  As indicated in the excerpt below, Trial Counsel clearly thought that the Backpage.com advertisements at issue had been introduced into evidence by the time Petitioner took the stand.

> Q. There are – we're going to get into this later, but there are a number of ads that we saw in the last days here in court together posted on this

15

board, particularly, which show ads that were being posted in Backpage in the month, I want to say of August of 2015.  Do you remember those?

A. No. I thought they were October.

Q. You think they were only October?

A. Yeah –

Q. Let's say this.  There were ads that we have had posted for prostitution that are, Brandy says were attributable to her.  All right?

A. Okay.

Q. And we have seen various phone numbers that those ads show posted by.  Now, some of those come up to a telephone number that starts with 734.  Are you familiar with that?

A. That's her telephone number.

Q. When you –

MR. COATS: Objection. Facts not in evidence. The postings he's talking about are not in evidence.

MR. HOWARTH: *I think they were introduced in evidence.*

ECF No. 107, PageID.1589–90 (emphasis added).   However, Counsel for the Government informed Trial Counsel that "[t]he only Backpage ads in evidence are Government Exhibit 7.   They all just have the defendant's phone number, 3135873399."  *Id.* at PageID.1590.

16

Trial Counsel did not move to admit the August 2015 Backpage.com advertisements associated with MV-1's phone number into evidence. Nevertheless, he seems to have referenced the advertisements in his closing argument. Specifically, he stated

> [T]hat seems to be the key date as far as these ads that appear on Backpage, August 27[.] . . . [MV-1 testified] [s]he did not want to be a prostitute but she did it out of love or fear of [Petitioner] and what we find is that we have a Backpage ad, which everybody agrees was posted, but that ad goes back two weeks before that, to August the 13th. And you will be able in your notebooks and any review you want to make of the evidence to find out that that's really the date that it goes back to and you may check please to how those ads were posted at the beginning as to what telephone number.

ECF No. 108, PageID.1999–2000.

The failure to present exculpatory evidence can constitute ineffective assistance of counsel. *See Tucker v. Renico*, 317 F. Supp. 2d 766, 776 (E.D. Mich. 2004). However, it is also possible that Trial Counsel made a strategic decision not to introduce the Backpage.com advertisements in light of how the trial was progressing. Such a decision would have been reasonable given that there was already evidence in the record that (1) the Backpage.com account had been created on August 13, 2015, before both MV-1 and Petitioner testified that they reconnected on Facebook, (2) MV-1's phone was sometimes used to post Backpage.com advertisements, (3) clients sometimes called MV-1's phone number to enquire about

17

the advertisements.   These facts, combined with Petitioner's testimony, were sufficient for jurors to infer that MV-1 engaged in prostitution without Petitioner—the defense theory—thus making the August 2015 Backpage.com advertisements, to some extent, cumulative.

Additionally, Trial Counsel may have decided that the August 2015 Backpage.com advertisements instead undermined the defense.   Specifically, the content of these advertisements is quite different from the later ones listing Petitioner's phone number as the number to contact.   These early advertisements lack the "Hey, I'm Jewel. . . ." language.   ECF No. 105, PageID.1260.   Indeed, one refers to the escort as "Dream" instead.   ECF No. 119, PageID.2235–37.   Given that there was a lot of evidence during the trial about the different ways that Petitioner and MV-1 communicated in writing, Trial Counsel could have determined that such a marked change in the content of the advertisements would instead support the narrative that Petitioner got involved and forced MV-1 to continue prostituting.

Moreover, Trial Counsel may have believed the evidence of Backpage.com advertisements made before MV-1 and Petitioner reconnected would run afoul of Federal Rule of Evidence 412's bar on a victim's prior sexual history and the Court's prior *in limine* order (ECF No. 71).   The Court specifically notes that Petitioner asserts this evidence should have been introduced to demonstrate that MV-1 engaged in "a pattern of behavior."   ECF No. 119, PageID.2168.   This is the very thing Rule

18

412 is meant to guard against.  *See United States v. Jackson*, 627 F. App'x 460, 462 (6th Cir. 2015) ("[U]sing prior commercial sex acts to impeach the victim's credibility 'embod[ies] a particularly offensive form of stereotyping' and is not permissible[.]" (second alteration in original) (quoting *United States v. Anderson*, 139 F.3d 291, 303 (1st Cir.1998))).  Counsel's strategy "need not be particularly intelligent or even one most lawyers would adopt, but it must be within the range of logical choices an ordinarily competent attorney . . . would assess as reasonable to achieve a specific goal."  *Miller v. Francis*, 269 F.3d 609, 616 (6th Cir. 2001) (alteration in original) (citation and internal quotation marks omitted).  And the decision not to introduce the Backpage.com advertisements falls within that "range." *See id*.

Even if Trial Counsel's failure to present the Backpage.com evidence was deficient, Petitioner cannot show that he was prejudiced by the deficiency.  To show prejudice, "[t]he likelihood of a different result must be substantial, not just conceivable."  *Harrington*, 562 U.S. at 112.  With respect to the mitigating evidence, the entire defense theory was that MV-1 was lying.  As discussed *supra*, there was already evidence before the jury that she had been engaging in prostitution without Petitioner.

However, even assuming that MV-1 was prostituting herself without Petitioner for some portion of August 2015, that does not negate the overwhelming

evidence of Petitioner's eventual involvement. For example, Detective Sergeant Higgason on August 31, 2015, MV-1 texted Petitioner, "tell me why he want him to jack him off with my feet instead of my hand." ECF No. 105, PageID.1176. Petitioner responded, "do it LMAO." *Id.* at PageID.1177. Petitioner then asked MV-1, "you know how much he paying again," to which she responded, "120." *Id.* Additionally, advertisements for MV-1 were posted on Backpage.com listing Petitioner's phone number as the contact at least as early as October 2, 2015. ECF No. 105, PageID.1259–60. Petitioner, himself, does not deny that the advertisements posted during October came from his iPhone and listed his phone number as the number to contact, and it is clear from the verdict that the jury did not find his testimony about loaning his phone to MV-1 credible. Notably, Orion King testified that Petitioner told him that Petitioner began prostituting MV-1 in October 2015. Moreover, Agent Lance Welker testified that on October 5, 2015 at 2:38 a.m., Petitioner texted someone saved in his phone under the name "Handz," "If she get a call, is it okay if I come down there till he leave[.]" ECF No. 106, PageID.1544. At 3:30 that morning, MV-1 texted Petitioner that she was "done," but at 4:17 a.m. she texted Petitioner to "Stay down there." *Id.* at PageID.1544–45. MV-1 continued at 5:14 a.m. "I'm done, but he's still here." ECF No. 105, PageID.1198–99. When Petitioner asked, "why he ain't left yet?" MVI-1 responded, "He getting cleaned up." *Id.* at PageID.1199.

20

The Court could continue; however, the aforementioned examples are sufficient to show that even with inclusion of the Backpage.com advertisements from mid- to late-August 2015, there is not "a reasonable probability that . . . the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Indeed, the Court notes that the inclusion of the August 2015 Backpage.com advertisements would have had no bearing on Petitioner's production of child pornography charge.

Thus, the Court finds that Petitioner cannot demonstrate that he was prejudiced by Trial Counsel's alleged deficiency and thus cannot sustain an ineffective assistance of counsel claim on this ground.

### iii.   Ineffective Assistance of Appellate Counsel

Petitioner asserts his "counsel [o]n appeal failed to [present] the appellate court with the records in this Court regarding the [G]overnment's suppression of exculpatory evidence located on [MV-1]'s HTC Desire 626s," which "would have warranted automatic reversal on direct appeal had the issue been investigated and properly presented." ECF No. 119, PageID.2151.

> In *Jones v. Barnes*, 463 U.S. 745, 103 S. Ct. 3308, 77 L.Ed.2d 987 (1983), [the Supreme Court] held that appellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal. Notwithstanding *Barnes*, it is still possible to bring a *Strickland* claim based on counsel's failure to raise

21

a particular claim, but it is difficult to demonstrate that counsel was incompetent. *See, e.g.*, *Gray v. Greer*, 800 F.2d 644, 646 (C.A.7 1986) ("Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome").

*Smith v. Robbins*, 528 U.S. 259, 288 (2000).

Here, for the reasons discussed in Section III, Subsection A, Part 2, Subpart i *supra*, it is not at all clear that Petitioner's *Brady* claim was "clearly stronger" than those raised on appeal.  Indeed, it is not at all clear that Petitioner's *Brady* claim is meritorious, let alone "nonfrivolous."  As such, Appellate Counsel was not ineffective for failing to raise the *Brady* claim.  *See Macklin v. United States*, 92 F.3d 1185, *1 (6th Cir. 1996) (table opinion) (affirming district court's denial of relief under § 2255 because, *inter alia*, petitioner's "*Brady* issue was frivolous, and counsel was not ineffective in failing to raise [this] meritless issue[]"); *Tackett v. Trierweiler*, 956 F.3d 358, 375 (6th Cir. 2020) ("The failure to raise a meritless claim does not constitute ineffective assistance of counsel.").  Accordingly, Petitioner's ineffective assistance of appellate counsel claim must fail.

### 3.  Request for Discovery and Evidentiary hearing

Petitioner requests an evidentiary hearing so that he may determine whether "he can meet his burden to establish[] a *Brady* violation with respect to the HTC Desire 626s cell phone[.]"  *See* ECF No. 119, PageID.2148.  He asserts that the

22

phone contains evidence that MV-1's "phone was used for prostitution and Backpage.com." ECF No. 119, PageID.2146

Although he requests an evidentiary hearing, Petitioner, in effect, seeks discovery related to the HTC Desire. However, movants under 28 U.S.C. § 2255 are not automatically entitled to discovery. Pursuant to Rule 6(a) of the Rules Governing § 2255 Proceedings, a court may permit discovery if, within the exercise of its discretion, it finds good cause for discovery. *Thomas v. United States*, 849 F.3d 669, 680 (6th Cir. 2017). Good cause exists "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is confined illegally and is therefore entitled to relief." *Id.* Rule 6 does not "sanction fishing expeditions based on a petitioner's conclusory allegations." *Williams v. Bagley*, 380 F.3d 932, 974 (6th Cir. 2004). "[T]he petitioner must set forth specific allegations of fact." *Id.* Moreover, "[t]he burden of demonstrating the materiality of information requested is on the moving party." *Id*.

Regardless, movants under § 2255 are only entitled to an evidentiary hearing where a "factual dispute arises" while the court is reviewing the motion, unless "the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007). "Where, as here, the

23

judge considering the § 2255 motion also presided over the trial, the judge may rely on her recollections of the trial." *Ray*, 721 F.3d at 761 (citing *Blanton v. United State*s, 94 F.3d 227, 235 (6th Cir. 1996)).

Here, Petitioner is not entitled to discovery or an evidentiary hearing. For the reasons discussed in Section III, Subsection A, Part 2, Subpart i *supra*, Petitioner has not shown good cause exists to permit him to engage in discovery, *see Thomas*, 849 F.3d at 680, or established a factual dispute that entitles him to an evidentiary hearing, *Valentine*, 488 F.3d at 333. *See also Cornwell v. Bradshaw*, 559 F.3d 398, 410 (6th Cir. 2009) ("Rule 6 does not sanction fishing expeditions based on a petitioner's conclusory allegations" (quoting *Williams*, 380 F.3d at 974). As such, his request is denied.

### B. Motions to Amend Motion to Vacate (ECF Nos. 121 and 127)

Petitioner filed his First Motion to Amend on December 3, 2020. ECF No. 121. He filed his Second Motion to Amend a few months later on April 26, 2021. ECF No. 127. Both of these were filed well after the expiration of the one-year limitations period for federal habeas petitions set forth in 18 U.S.C. § 2255(f).

Federal habeas cases "may be amended . . . as provided in the rules of procedure applicable to civil actions." *Mayle v. Felix*, 545 U.S. 644, 662 (2005) (alteration in original) (citing 28 U.S.C. § 2242). Under the Federal Rules of Civil Procedure, "[a]mendments made after the statute of limitations has run relate back

24

to the date of the original pleading if the original and amended pleadings ar[i]se out of the conduct, transaction, or occurrence." *Id.* (alteration in original) (citation and quotation marks omitted); *see also* Fed. R. Civ. P. 15(c)(1)(B)).  The original and amended pleadings must "state claims that are tied to a common core of operative facts," instead of "simply . . . relat[ing] to the same trial, conviction, or sentence as a timely filed claim." *Mayle*, 545 U.S. at 662, 664.

### 1.  First Motion to Amend (ECF No. 121)

In his First Motion to Amend, Petitioner argues (1) the Government violated his due process rights by soliciting false testimony, and failing to correct false testimony, from Orion King and MV-1, and (2) Appellate Counsel provided ineffective assistance by failing to raise said due process violation.  ECF No. 121, PageID.2269, 2279.  While Petitioner asserts in his Reply that the Government did not address his allegations of misconduct, he nevertheless "concede[s] . . . that Petitioner's 'Proposed amendment – alleging that the Government offered false testimony – does not relate back to any of his original claims[.]'"  ECF No. 125, PageID.2330.  Accordingly, Petitioner's First Motion to Amend (ECF No. 121) is denied.

### 2.  Second Motion to Amend (ECF No. 127)

Petitioner's Second Motion to Amend seeks to "clarify[y] [] his ineffective assistance of trial counsel claim[]."  ECF No. 127, PageID.2339.  Specifically, he

explains that trial counsel was ineffective for (1) failing "to investigate electronic matters (cell phone evidence) and internet matters (Backpage.com, Facebook.com, and Instagram records)," which could have been used to impeach MV-1, *id.* at PageID.2342–45; (2) failing "to present/produce Backpage advertisements that Counsel promised to the jury," *id.* at PageID.2346; and (3) failing "to impeach [MV-1]'s and Orin King's testimony with Backpage ads and other relevant evidence," *id.* at PageID.2352.  To the extent Petitioner's "clarifications" relate to the unadmitted Backpage.com advertisements, the Court finds that they relate back to his initial Motion to Vacate.  Those arguments are addressed in Section III, Subsection A, Part 2, Subpart ii *supra*.  To the extent Petitioner raises additional claims about Trial Counsel's failure to investigate and utilize Facebook and Instagram records, these constitute a separate ineffective assistance of counsel claim, distinct from that raised in the initial Motion to Vacate.  As such, Petitioner's Second Motion to Amend is granted in part and denied in part.

### C. Motion to Appoint Counsel (ECF No. 128)

The proceedings on a motion to vacate a petitioner's sentence under 28 U.S.C. § 2255 are civil in nature.  *Sellers v. United States*, 316 F. Supp. 2d 516, 522 (E.D. Mich. 2004). Thus, the Supreme Court has held that the Constitution "guarantees no right to counsel on habeas."  *Wright v. West*, 505 U.S. 277, 293 (1992) (citing *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987)).  A court has discretion to appoint

26

counsel to a habeas petitioner and must do so only in the interest of justice or where due process requires. *Mira v. Marshall*, 806 F.2d 636, 638 (6th Cir. 1986); *Lemeshko v. Wrona*, 325 F. Supp. 2d 778, 787 (E.D. Mich. 2004). As such, the appointment of counsel is required where the court determines an evidentiary hearing is necessary. *Id.* In exceptional cases, the appointment may be justified if the petitioner "has made a colorable claim, but lacks the means to adequately investigate, prepare, or present the claim." *Id.* at 788. Other relevant factors include the complexity of the case and the petitioner's ability to present his or her claims. *Sellers*, 316 F. Supp. 2d at 522.

Here, Petitioner's various pleadings demonstrate that he has the ability to clearly state his claims. His Motion to Vacate and Reply in support present four colorable grounds for relief and supporting factual bases for each claim. Petitioner's Motions to Amend also present colorable claims, although only the Second Motion to Amend relates back to his original pleading. While Petitioner has indicated some issues with obtaining discovery, he has not articulated any exceptional circumstances that would justify appointing counsel, particularly given that the Court is denying his Motion to Vacate. Accordingly, Petitioner's Motion to Appoint Counsel is denied.

## IV.   CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253, the Court must determine whether to grant a

certificate of appealability as to any of the claims presented in the Motion to Vacate.

Section 2253(c) provides:

> (1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from-
>
> > (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or
> >
> > (B) the final order in a proceeding under section 2255.
>
> (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.
>
> (3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

28 U.S.C. § 2253(c).

In order to make "substantial showing" of the denial of a constitutional right,

as required under 28 U.S.C. § 2255(c)(2), a habeas prisoner must demonstrate "that

reasonable jurists could debate whether . . . the petition should have been resolved

in a different manner or that the issues presented were adequate to deserve

encouragement to proceed further."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)

(citation and internal quotation marks omitted).  Where a district court has rejected

28

the constitutional claims on the merits, the petitioner must demonstrate only that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id*.  The petitioner need not show that the appeal will succeed. *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

Here, the Court concludes that reasonable jurists could determine that the Court's assessment of (1) whether Petitioner is entitled to an evidentiary hearing and (2) Petitioner's ineffective assistance of trial counsel for failure to present exculpatory evidence from Backpage.com and use it to impeach MV-1 is debatable. As such, the Court grants a certificate of appealability on those issues.

Furthermore, because the Court has granted a certificate of appealability, leave to appeal *in forma pauperis* is also granted.  28 U.S.C. § 1915(a)(3). The standard for issuing a certificate of appealability is higher than the standard for granting *in forma pauperis* status on appeal.  *Foster v. Ludwick*, 208 F. Supp. 2d 750, 764 (E.D. Mich. 2002); *see also Lucaj v. Stewart*, 2016 WL 7210719, at *4 (E.D. Mich. Dec. 13, 2016).  A court may grant leave to proceed *in forma pauperis* if it finds that the appeal is not frivolous and could be taken in good faith.  28 U.S.C. § 1915(a)(3).  Because Petitioner's appeal is not frivolous and could be taken in good faith, the Court grants him leave to appeal *in forma pauperis.*

29

## V.   CONCLUSION

Accordingly, for the reasons articulated above, **IT IS HEREBY ORDERED** that Petitioner's Motion to Vacate (ECF No. 115) is **DENIED**.

**IT IS FURTHER ORDERED** that Petitioner's First Motion to Amend (ECF No. 121) is **DENIED**

**IT IS FURTHER ORDERED** that Petitioner's Second Motion to Amend (ECF No. 127) is **GRANTED IN PART AND DENIED IN PART**.

**IT IS FURTHER ORDERED** that Petitioner's Motion to Appoint Counsel and for Evidentiary Hearing (ECF No. 128) is **DENIED**.

**IT IS FURTHER ORDERED** that the Court **GRANTS** Petitioner a certificate of appealability on the issues of whether he is entitled to an evidentiary hearing and whether Trial Counsel was ineffective for failing to present exculpatory evidence from Backpage.com and use it to impeach MV-1.

**IT IS FURTHER ORDERED** that the Court **GRANTS** Petitioner leave to proceed *in forma pauperis* on appeal.


**IT IS SO ORDERED**.

30

/s/ Gershwin Drain_____
GERSHWIN A. DRAIN
UNITED STATES DISTRICT JUDGE

Dated:  March 31, 2023


CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
March 31, 2023, by electronic and/or ordinary mail.
/s/ Teresa McGovern
Case Manager

31